WILBUR J. SCHMIDT, Secretary, Department of Health and SocialServices
You request my opinion on two questions regarding the authority and responsibility given your department under secs. 46.16 and46.17, Stats., with respect to places of confinement operated by counties or municipalities.
First you ask:
 "Specifically, does Section 46.16 convey any authority for the Department to order or prescribe methods of operation for local places of confinement, the numbers and qualifications of staff to be employed, standards for food service, and the nature of programs to be provided for the treatment and training of persons confined."
 State agencies, of course, have only such powers as are expressly granted by statute or necessarily implied as incidental to carrying out the duties and powers expressed in the statutes. Any power sought to be exercised must be found within the four corners of the statute under which the agency proceeds. American Brass Co. v. State Board of Health (1944), 245 Wis. 440, 15 N.W.2d 27; The State ex rel. Priest v. The Regents of the University of Wisconsin (1882), 54 Wis. 159, 11 N.W. 472.
Section 46.16, Stats., reads in material part:
 "General supervision and inspection by department. (1) GENERALLY. The department shall investigate and supervise all the charitable, curative, reformatory and penal institutions, including county infirmaries of every county and municipality . . . and all industrial schools, hospitals, asylums and institutions, organized for the purpose set forth in s. 58.01, and familiarize itself with all the circumstances affecting their management and usefulness.
"***
 "(4) Prisons. It shall visit all places in which persons convicted or suspected of crime or mentally ill persons are confined, and ascertain their arrangement for the separation of *Page 269 
the hardened criminals from juvenile offenders and persons suspected of crime or detained as witnesses; collect statistics concerning the inmates, their treatment, employment and reformation; and collect information of other facts and considerations affecting the increase or decrease of crime and mental illness.
 "(5) Inspections. It shall inquire into the methods of treatment, instruction, government and management of inmates of the institutions mentioned in this section; the conduct of their trustees, managers, directors, superintendents and other officers and employes; the condition of the buildings, grounds and all other property pertaining to said institutions, and all other matters pertaining to their usefulness and management; and recommend to the officers in charge such changes and additional provisions as it deems proper.
 "(6) Frequency of inspections. It shall inspect and investigate each institution annually, or oftener; and, when directed by the governor, it shall make special investigation into its management, or anything connected therewith, and report to him the testimony taken, the facts found and conclusions thereon." (Emphasis added.)
I am unable to find in sec. 46.16, Stats., any express grant of authority for your department to order methods of operation, adequacy of staff, food service standards and treatment programs. While the title and introductory sentence of sec. 46.16 (1), Stats., indicate that "The department shall investigate and supervise . . .", no specific supervisory power is indicated by the remaining paragraphs. It is an established rule of statutory construction that while a caption to a statute and legislative history may be persuasive to ascertain legislative intent, these sources of information cannot prevail in the face of clear language of a statute to the contrary. Hoeft v. Milwaukee Suburban Transport Corp. (1969), 42 Wis.2d 699, 168 N.W.2d 134.Prechel v. Monroe (1968), 40 Wis.2d 231, 161 N.W.2d 373. While (5) requires the department to inquire into the methods of treatment, government and management of inmates, etc., specific authority is given solely to "recommend to the officers in charge such changes and additional provisions as it deems proper." In a similar manner, (6) requires the department to investigate each *Page 270 
institution annually or oftener without providing authority to do more than recommend changes.
Section 46.17, Stats., provides substantial control in the department of construction and maintenance of buildings used for confinement. Such section provides:
 "County buildings; establishment, approval, inspection. (1) The department shall fix reasonable standards and regulations for the design, construction, repair and maintenance of . . . houses of correction, . . . jails and lockups, and juvenile detention homes and shelter care facilities, with respect to their adequacy and fitness for the needs which they are to serve.
 "(2) The selection and purchase of the site, and the plans, specifications and erection of buildings for such institutions shall be subject to the review and approval of the department.
. . .
 "(3) Before any such building is occupied, and annually or oftener thereafter, the department shall inspect it with respect to safety, sanitation, adequacy and fitness, and report to the authorities conducting the institution any deficiency found, and order the necessary work to correct it or a new building. If within 6 months thereafter such work is not commenced, or not completed within a reasonable period thereafter, to the satisfaction of the department, it shall suspend the allowance of state aid for, and prohibit the use of such building until said order is complied with." (Emphasis added.)
It is evident then that the legislature in sec. 46.17, Stats., provided specific control in the department over county buildings used for confinement even to the extent of prohibiting the use of unfit buildings. Given the variance between the authority granted under sec. 46.16, Stats., and that granted in 46.17, Stats., is there a basis for the necessary implication that the department has rulemaking and approval power over methods of operation, staffing, food service, etc., functions not related to the building itself? I find no such necessary implication in sec.46.16, Stats. While it could be argued that the broad language of sec. 46.16 (1), Stats., provides general rulemaking and enforcement authority over the listed aspects of the care of *Page 271 
confined persons in county institutions, I see no basis to indicate that such was the intent of the legislature.
In sec. 46.17, Stats., the legislature provided specific enforcement authority over the physical plant of such buildings. By secs. 140.055 and 140.05, Stats., the department was given supervision of sanitary aspects of the subject institutions. Section 140.05 (1), Stats., provides enforcement power in these words:
 "(1) . . . It shall have power to execute what is reasonable and necessary for the prevention . . . of disease. . . ."
No such enforcement language is present in sec. 46.16, Stats. It is therefore my opinion that sec. 46.16, Stats., does not convey authority to order or prescribe methods of operation for local places of confinement, numbers or qualifications of staff to be employed, standards for food service, and the nature of training programs provided confined persons, unless such factors directly affect sanitary conditions regulated by secs. 140.055 and 140.05, Stats.
Your second question is:
 "Does Section 46.17 provide any implicit authority for the establishment of standards and methods of operation which would not otherwise appear to be conveyed by Section 46.16?"
Section 46.17, Stats., is limited to design, construction, repair and maintenance of confinement buildings. The department may order correction of defects relating to safety, sanitation, adequacy or fitness, and may prohibit use of the building until the order is complied with. No such enforcement authority is provided in sec. 46.16, Stats., in relation to treatment and management of inmates, etc., factors not relating to the structure or maintenance of buildings. I see no indication of legislative intent to have the enforcement powers over buildings of sec. 46.17, Stats., apply to the area of management of inmates set forth in sec. 46.16, Stats. On the contrary, sec. 46.16 (5), Stats., clearly indicates that the department's powers in this area are limited to recommending changes to officers-in-charge or upon his request, to the Governor. It is my opinion that the authority to suspend state aid or prohibit the *Page 272 
use of buildings given in sec. 46.17 (3), Stats., is not available to the department for enforcement of sec. 46.16, Stats.
RWW:WMS